**JURY TRIAL DEMANDED**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| TINA MINGO, *et al.,*<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, *et al.*,<br><br>Defendants. | Civil No. 8:22-cv-02419-DLB |

**AMENDED COMPLAINT**

For their Complaint against the **American Federation of Government Employees ("AFGE"), Local 2876 of the American Federation of Government Employees ("Local 2876"), and Shakuntla Singla**, Plaintiffs **Tina Mingo** and **Kimberly Warner**, by their undersigned attorney, upon knowledge as to their own actions and dealings, and upon information and belief as to Defendants and their actions, allege as follows:

**NATURE OF THE ACTION**

1. The purpose of this action is to seek redress for the substantial harm caused by Defendants' dissemination of highly damaging and knowingly false and defamatory statements about Mingo and Warner.

2. The principal culprit was Singla, who became Local 2876 President in early 2021 under highly irregular circumstances.

3. Singla's becoming President was all the more unusual given her lack of a prior leadership role, criminal record, checkered employment history, and combative personality. In

1998, Singla pled guilty to a federal crime of hacking into and causing damage to the U.S. Coast Guard's computer system by using another employee's username and password for which she was sentenced to five months in prison, fined $35,000, and ordered to undergo mental health counseling and treatment.

4. In April 2022, Singla was removed from her position as Local 2876 President by AFGE leadership—the same leadership that made it possible for Singla to become Local 2876 President—after she was found to have compromised Local 2876's financial integrity, mismanaged the Local's resources, incompetently performed her duties, and submitted bogus reimbursement requests.

5. During her abbreviated tenure as Local 2876 President, Singla, in her capacity as President and as an agent and representative of Local 2876 and AFGE, sent false and defamatory statements about Mingo and Warner to Local 2876 members, non-members, and AFGE officials in which she falsely accused Mingo and Warner of criminal and fraudulent behavior in an attempt to destroy their reputation and inflict serious injury, while at the same time deflecting attention from Singla's own financial improprieties that ultimately led to her removal from office.

6. Singla's destructive actions against Mingo and Warner were motivated by an intense dislike and jealousy of them, with active support of AFGE officials, who helped engineer Singla's rise to the Local 2876 presidency through improper interference in the election process.

7. Upon becoming President, Singla terminated Mingo and Warner as shop stewards even though they were the only remaining stewards at the time. Ironically, Mingo and Warner had represented Singla for more than ten years in union and EEO matters up to the day she became Local 2876 President. As a result, AFGE Local 2876 may be the only local in the nation that discarded all of its representation for its members.

8. Singla's intense hatred of Mingo and Warner is also reflected in her improper refusal to reimburse their attorneys' fees in retaliation cases they were pursuing despite the near-unanimous approval of this reimbursement by the Local's membership. In fact, the only dissenting vote came from Singla who, once in a position of authority, refused to implement the will of the membership, to the detriment of Mingo and Warner.

9. Although prior to filing this action, Mingo and Warner demanded a retraction of Defendants' false and defamatory statements, Defendants refused to comply, necessitating the commencement of this action.

## PARTIES

10. Plaintiff Tina Mingo is a Maryland citizen residing at 307 Nevada Avenue, Suite 2316, in Odenton, Maryland. Mingo retired in 2019 from her position at GPO.

11. Mingo has held officer positions in Local 2876, including the position of President and Vice President, and has served as a Local Steward for many years.

12. Plaintiff Kimberly Warner is a District of Columbia citizen residing at 1152 45th Place, SE, in Washington, D.C. Warner is a Collections Analyst at the GPO.

13. Warner has held officer positions in Local 2876, including, most recently, the position of President from in or about August 2019 until January 2021. She has also served as Vice President, District 14 Women's Coordinator, and Local Steward for many years.

14. Both Mingo and Warner are dues-paying members of Local 2876 and AFGE and were dues-paying members of Local 2876 and AFGE during the events at issue.

15. Prior to the events in question, Mingo and Warner were popular and respected members of Local 2876.

16. On information and belief, Defendant AFGE is an unincorporated labor union

headquartered at 80 F Street, NW, in Washington, DC.

17. On information and belief, AFGE has dues-paying members, including officers, who reside and/or work in Prince George's County, Maryland.

18. On information and belief, Local 2876 is an unincorporated local labor union affiliated with AFGE. Local 2876 has dues-paying members who reside and/or work in Prince George's County, Maryland.

19. On information and belief, Singla is a citizen of Virginia who resides at 9405 Englefield Court, Fairfax Station, VA 22039.

20. Singla is a member of Local 2876 and served as the President of Local 2876 from in or about January 2021 until on or about April 18, 2022 when she was removed from office as President due to various improprieties.

21. In her capacity as Local 2876 President, Singla was an agent and representative of Local 2876 and AFGE.

22. On or about March 19, 1998, Singla pled guilty to a federal crime of accessing a federal computer without authorization and intentionally causing damage to the U.S. Coast Guard's computer system, after which she was sentenced to five months in prison and ordered to pay the Coast Guard $35,000.[1]

## JURISDICTION AND VENUE

23. This Court has personal jurisdiction over Defendants AFGE and Local 2876 pursuant to Md. Code, Cts. & Jud. Proc. § 6-102 because they are unincorporated associations with members domiciled in Maryland.

---

[1] Sylvia Moreno, "Women Gets Five Months for Hacking," The Washington Post, June 20, 1998 (https://www.washingtonpost.com/archive/local/1998/06/20/woman-gets-five-months-for-hacking/2091c9fc-a6db-43c0-a33a-b788cde67073/).

24. This Court has personal jurisdiction over all Defendants pursuant to Md. Code, Cts. & Jud. Proc. § 6-103(b)(4) because Defendants caused tortious injury in Maryland by acts or omissions outside of Maryland and Defendants regularly do or solicit business in Maryland, engage in a persistent course of conduct in Maryland, and derive substantial revenue from goods and services used or consumed in Maryland.

25. In particular, Defendants AFGE and Local 2876 have dues-paying members who work and/or reside in Maryland, solicit prospective members who work and/or reside in Maryland, represent members in labor disputes involving members who work and/or reside in Maryland, have offices in Maryland, and have officers who work and/or reside in Maryland.

26. On information and belief, Singla, during her tenure as President of Local 2876, represented dues-paying members who worked and/or resided in Maryland, solicited prospective members who worked and/or resided in Maryland, and represented members in labor disputes involving members who worked and/or resided in Maryland.

27. Venue is proper in the Circuit Court for Prince George's County, Maryland pursuant to Md. Code, Cts. & Jud. Proc. § 6-201 because Defendants AFGE and Local 2876 have members who reside in Prince George's County, carry on regular business in the County, are employed in the County, and/or habitually engage in a vocation in the County. In addition, Defendants AFGE and Local 2876 carry on regular business in the County. Singla, in her capacity as Local 2876 President, carried on regular business in the County.

28. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and (3) because a substantial part of the events giving rise to this claim occurred in this District and/or each of the Defendants is subject to the Court's personal jurisdiction.

**STATEMENT OF FACTS**

29.     In or about January 2021, Singla became President of Local 2876 through irregular circumstances. Among other things, she was not elected by Local 2876's membership through the normal and required electoral process. Other candidates, including Warner, who was the incumbent President at the time, was not included on the ballot as a candidate for reelection despite being nominated by at least two members of Local 2876. Ballots were not mailed to all eligible Local 2876 voting members.

30.     On information and belief, Singla's becoming Local 2876 President was improperly orchestrated by AFGE leaders and staff, in violation of AFGE's National Constitution and Local 2876's governing documents.

31.     This occurred despite Singla's lack of previous leadership experience with AFGE, her prior federal conviction for hacking into and causing damage to U.S. Coast Guard computer systems, and her checkered employment history at GPO.

32.     Once Singla became President, she launched a nasty, destructive campaign of lies and outrageous attacks against her predecessor Warner, as well as against Mingo, who had previously served in officer positions for Local 2876, including as President.

33.     These included the dissemination by Singla of false and defamatory statements about Mingo and Warner consisting of malicious, groundless, and humiliating attacks in which she falsely accused them of serious criminal behavior without providing a shred of evidence in support, falsely accused them of settling a member's grievance without the member's approval when, in fact, it was *Ms. Singla* who did this, and improperly interfered in Mingo and Warner's legal representation in a grievance with GPO by purporting to unilaterally rescind a previously approved member resolution to cover their legal expenses in cases relating to their roles as Local

2876 officers.

### Singla's False and Defamatory Report to Local Members and Others

34. Particularly outrageous and damaging was a document entitled "Report on Findings from Audit of Local 2876 Funds Use from 2018 to 2020" ("Report") that Singla wrote and distributed to a large audience of Local 2876 members and others, including non-union members in GPO management. A true and correct of the Report is attached as Exhibit 1.

35. The Report, which Mingo and Warner first became aware of in August 2021, contained numerous false and defamatory statements about Mingo and Warner, falsely implying that Mingo and Warner, as members of the prior executive board, had perjured themselves in government filings, committed forgery and bank fraud, intentionally disregarded laws, made unauthorized payments, trespassed in Local 2876's offices, and received unauthorized payments of personal legal fees, among other things.

36. Singla's false and defamatory statements about Mingo and Warner caused injury to Mingo and Warner's professional and personal reputation as well as emotional distress, mental anguish, and damage to their overall well-being.

37. Singla wrote and sent this Report in her capacity as Local 2876 President and agent and representative of Local 2876 and AFGE.

38. Although Singla claimed that some of the information in the Report came from an alleged auditor's report, Singla refused to share this supposed auditor's report with Mingo and Warner despite their repeated requests of Singla and AFGE management. Singla and the Local 2876 treasurer, however, did not hesitate to try to accommodate another dues-paying member who sought to review the same information.

39. In the Report, Singla falsely states that government filings "by the prior executive

board," consisting of six members including Mingo and Warner, contained "inaccuracies as to use of improper categories to describe income or expenses, and other mislabeling" that "may harm the Local." Singla, however, knew that there were not six executive board members during that timeframe. During that timeframe, the executive board consisted of Mingo, Warner, Ronald Scott as treasurer, and Singla as sergeant at arms.

40. Singla fails to offer any specifics in support of this false and defamatory assertion.

41. Mingo and Warner categorically deny that government filings by them contained such inaccuracies or mislabeling.

42. In the Report, Singla falsely implies that Mingo and Warner, as members of Local 2876's prior executive board, engaged in forgery and bank fraud by forging signatures on Local 2876 checks.

43. Mingo and Warner engaged in no such action and Singla offers no specifics to support this false and defamatory statement.

44. In the Report, Singla falsely implies that Mingo and Warner, as members of Local 2876's prior executive board, engaged in "[i]ntentional disregard of the law" and failed to follow rules "placing the Local at risk of penalties/sanctions."

45. Mingo and Warner engaged in no such action and Singla offers no specifics to support this false and defamatory statement.

46. In the Report, Singla falsely accuses Mingo and Warner, as members of Local 2876's prior executive board, of "unauthorized payments by officers to officers and others."

47. Mingo and Warner engaged in no such action and Singla offers no specifics to support this false and defamatory statement.

48. In the Report, Singla falsely accuses Mingo and Warner, as members of Local

2876's prior executive board, of "[e]ntering the Local office after elections" "at odd times of the night after they were no longer 'legally' officers of the Local."

49. Mingo and Warner engaged in no such action and Singla offers no specifics to support this false and defamatory statement.

50. In fact, security camera footage and associated records confirm that Mingo and Warner did no such thing.

51. In the Report, Singla falsely accuses Mingo and Warner, as members of Local 2876's prior executive board, of engaging in "[u]nauthorized payment of personal legal fees" by "sign[ing] checks [for] more than $30,000 for their personal legal expenses without proper notification to and authorization of members." She further falsely states that "no proper discussion of authorization or amounts claimed as approved" were approved.

52. Not only were the legal expenses in question for union-related activity approved by an almost unanimous vote of Local 2876 members at a duly called meeting, but Singla was in attendance at the meeting, witnessed the approval of these reimbursements by Local 2876 membership, and in fact was the *only* Local 2876 member in attendance to vote against the reimbursement of these legal expenses.

53. Thus, Singla *knew* that her accusations of unauthorized payment of personal legal fees for Mingo and Warner were false but she knowingly and maliciously published these false and defamatory accusations anyway.

54. In the Report, Singla falsely accuses Mingo and Warner of "violation of AFGE rules and mandated duties" and having "showed disregard of rules in how financial operations were performed and failed to properly document authorizations."

55. Mingo and Warner engaged in no such action and Singla offers no specifics to

support this false and defamatory statement.

56. Finally, in the Report, Singla falsely implies that Mingo and Warner, as former officers of Local 2876, failed to make "[r]equired changes" resulting from an audit of the Local by the Office of Labor-Management Standards in 2006.

57. Mingo and Warner did not fail to make these changes and Singla offers no specifics to support this false and defamatory statement.

58. On information and belief, none of the false and defamatory statements about Mingo and Warner contained in the Report by Singla are supported by any auditor's report that Singla claims to have had at the time.

Singla's Defamatory Emails

59. During her abbreviated tenure as Local 2876 President, Singla, in her capacity as Local 2876 President and as an agent and representative of Local 2876 and the AFGE, sent numerous emails to members of Local 2876, AFGE officials, and others containing false and defamatory statements about Mingo and Warner that caused injury to Mingo and Warner's professional, political, and personal reputation as well as emotional distress, mental anguish, and damage to their overall well-being.

60. Singla sent these defamatory emails about Mingo and Warner despite knowing that they were false.

61. On August 5, 2021, Singla sent such an email to Local 2876 member Trudy Hawkins as well as at least another 11 Local 2876 members. A true and correct copy of Singla's email is attached as Exhibit 2.

62. In this email, which Singla signs as "President, AFGE Local 2876/PCJC," Singla states: "No one seems to be concerned about [sic] that previous leadership spent over 30K to handle

their own legal cases without a budget and membership approval. Additionally, Ms. Warner sent me another invoice of $8,550 through her so called unqualified representative."

63. Recipients of Singla's email understood that her reference to "previous leadership" meant Mingo and Warner. In fact, Singla specifically mentions Warner by name.

64. Singla's statement that Mingo and Warner had spent over $30,000 of Local 2876 funds on personal legal cases without a budget and membership approval is not only false and defamatory, but Singla *knew* that it was false when she sent it.

65. Not only were the legal expenses in question for union-related activity, but they were approved by an almost unanimous vote of Local 2876 members at a duly called meeting. Singla attended this meeting, witnessed the approval of these expenses by Local 2876 membership, and in fact was the *only* Local 2876 member in attendance to vote against the reimbursement of these legal expenses.

66. Singla's false and defamatory statements about Mingo and Warner in the email were gratuitously added to her email to inflict harm on Mingo and Warner and to deflect attention from Singla's own improprieties and incompetence, which eventually came to light when the AFGE President removed Singla from office earlier this year.

67. On information and belief, Singla, in her capacity as Local 2876 President and AFGE agent and representative, sent additional emails containing false and defamatory statements about Mingo and Warner that she knew were false.

68. On information and belief, Singla sent these false and defamatory emails about Mingo and Warner that she knew were false because she does not like Mingo and Warner, was jealous of their popularity among the Local's members, and was jealous of the Local members' willingness to reimburse Mingo and Warner's attorneys' fees when the members would not

11

reimburse Singla's attorney's fees, among other reasons.

69. Singla's personal hatred and animosity toward Mingo and Warner is further reflected in her improper interference in and refusal to implement the will of the Local 2876 membership to reimburse Mingo and Warner's attorneys' fees in a retaliation case relating to their activities as shop stewards.

Singla Wrongfully Interferes with Local's Commitment to Reimburse Attorney Fees

70. In or about November 2018, at a duly convened meeting of Local 2876 members, Local 2876 members voted to reimburse Mingo and Warner $30,000 each to cover legal expenses in retaliation cases they were each pursuing against GPO.

71. The retaliation cases stemmed from GPO management's illegal suspension of Mingo and Warner's employment for official union time spent by them representing Local 2876 members who worked at the GPO Laurel, Maryland warehouse.

72. The only Local 2876 member at the meeting to vote against the proposed reimbursement of $30,000 each for Mingo and Warner's legal expenses was Singla, who said she was opposed to the reimbursement because Local 2876 previously denied Singla's request for reimbursement of her attorney fees in a non-union, personal EEO complaint she was pursuing.

73. On information and belief, because Singla was angry that the members had agreed to reimburse Mingo and Warner's attorneys' fees, she was determined to do all she could to prevent them from receiving these reimbursements and to otherwise undermine and harm them.

74. Despite the members' approval of these reimbursements, Singla, upon becoming Local 2876 President, unilaterally and without legal authority refused to comply with Mingo and Warner's reimbursement requests for fees and expenses incurred in their retaliation matters.

75. In April 2021, Mingo and Warner sought an emergency meeting of Local 2876

members to address Singla's improper interference. Singla attempted to interfere with the meeting by requiring signatures of the members who had sent emails agreeing to attend the meeting. However, there is no such requirement in Local 2876's bylaws or the AFGE National Constitution. Yet, more than the required 10% of the Local 2876 membership provided signatures and attended the meeting.

76. Despite obtaining the unnecessary signatures of Local 2876 members to convene an emergency meeting of Local 2876 pursuant to Local 2876 bylaws, Singla, as Local 2876 President at the time, refused to participate in the emergency meeting.

77. The emergency meeting proceeded without Singla with a quorum of Local 2876 members present. Local 2876 members in attendance voted unanimously to reestablish the previously approved reimbursement of Mingo and Warner's legal expenses, up to $30,000 each.

78. Nevertheless, Singla—as well as AFGE District 14 Vice President Ottis Johnson, National Secretary-Treasurer Eric Bunn, National President Everett Kelley, and General Counsel David Borer—refused to comply with the duly passed resolution of the Local 2876 members to reimburse Mingo and Warner.

79. On information and belief, Singla's actions reflect her personal dislike of Mingo and Warner and desire to harm them in any way that she could.

AFGE Removes Singla from Office

80. On or about April 18, 2022, Everett B. Kelley, AFGE's National President sent a memorandum ("Memorandum") to Members of AFGE Local 2876 regarding the imposition of a trusteeship for Local 2876. A true and correct copy of the Memorandum is attached as Exhibit 3.

81. In the Memorandum, Kelley says that Singla, as Local 2876 President at the time, "was suspended for compromising the Local's fiscal integrity by, among other things, making

several unilateral financial transactions, failing to furnish all books and financial documents as requested by [AFGE] District 14, and refusing to work in conjunction with the E-Board to pass a 2022 budget."

82. Kelley further states that Singla, as Local 2876 President, "mismanaged the Local's resources and incompetently performed her duties by, among other things, failing to maintain E-Board minutes, submitting duplicitous vouchers for reimbursement, and failing to pay stipends and sign vouchers for the Local Treasurer."

83. In the Memorandum, Kelley, as AFGE National President, said that he was immediately placing Local 2876 in trusteeship so that "proper financial controls and democratic principles" that had been compromised by Singla while she was Local 2876 President could be "restored and maintained."

84. It is ironic that at the same time Singla falsely accused Mingo and Warner of financial irregularity, she was in fact engaging in such behavior herself.

85. On information and belief, Singla made her false accusations against Mingo and Warner as a way to divert attention from the financial irregularities and corruption in which she was engaged.

Demand for Retraction

86. On July 5, 2022, Mingo and Warner, through their undersigned counsel, sent a letter to AFGE President Kelley demanding, among other things, a retraction and apology for the false and defamatory statements that Defendants disseminated about them.[2]

87. In a terse response in a letter dated July 18, 2022, AFGE through its in-house counsel denied that it defamed Mingo and Warner and did not otherwise address Mingo and

---

[2] Although the letter was sent on July 5, 2022, it was mistakenly dated June 5, 2022.

Warner's requests.

## COUNT I

### Defamation

88. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 87 as if set forth in this Count.

89. In her capacity as Local 2876 President and as an agent and representative of AFGE and Local 2876, Singla published numerous false and defamatory statements to third parties about Mingo and Warner, including but not limited to the false and defamatory statements discussed above in the Report and in Singla's email of August 5, 2021.

90. On information and belief, Singla published these false and defamatory statements about Mingo and Warner not only to members of Local 2876 but also to non-members in GPO management and others.

91. Singla's false statements about Mingo and Warner were defamatory *per se* because they accused Mingo and Warner of criminal wrongdoing and unfitness in their job or office. In addition, the words that Singla used imputed the defamatory character of what she was saying.

92. Singla's false statements about Mingo and Warner caused their standing in the community, including the AFGE member community, to suffer and their reputation to be harmed.

93. Singla's false statements were of and concerning Mingo and Warner because they either identified Mingo and Warner by name or because Mingo and Warner were readily identifiable as the subjects of Singla's false statements by the recipients of the false statements.

94. Singla's false and defamatory statements implied the existence of undisclosed defamatory facts, making them defamatory for this reason as well.

95. Singla published these statements with knowledge that they were false or with

15

reckless disregard as to whether they were true or false, and in bad faith.

96. On information and belief, Singla, in publishing these statements, misrepresented the findings of the so-called audit that she referenced and knew that the audit did not support the false and defamatory statements about Mingo and Warner that she published.

97. On information and belief, that is why Singla refused to provide Mingo and Warner with copies of or access to the so-called audit because Singla knew that doing so would reveal the knowing falsity of her statements about Mingo and Warner.

98. In the alternative, Singla published these false and defamatory statements negligently and failed to exercise the requisite standard of care to determine their truth before publishing them.

99. On information and belief, AFGE officials knew at the time that Singla was knowingly or recklessly publishing false and defamatory statements about Mingo and Warner and condoned and supported her in her tortious conduct and also did nothing to prevent or address it.

100. Singla's false and defamatory statements about Mingo and Warner have caused them damage, including injury to Mingo and Warner's reputation, financial interests, mental and emotional state, and overall well-being.

101. In the case of Warner in particular, Singla's false accusations of financial improprieties have jeopardized Warner's standing, promotion opportunities, and overall employment at GPO where she works in a financial capacity. They have also resulted in professional, political, and public humiliation and embarrassment.

102. Singla published these false and defamatory statements with actual and common-law malice because Singla does not like Mingo and Warner, was jealous of their success and popularity, and wanted to harm them in any way that she could.

103. AFGE and Local 2876 are legally responsible for Singla's publication of false and defamatory statements because she published these statements in her capacity as Local 2876 President and as an agent and representative of Local 2876 and AFGE.

104. AFGE refused Mingo and Warner's demand for a retraction and apology because, on information and belief, AFGE and its leaders sought to harm Mingo and Warner or were recklessly indifferent to the harm caused to Mingo and Warner by Singla's actions.

## COUNT II

### False Light Invasion of Privacy

105. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 104 as if set forth in this Count.

106. By publishing false and defamatory statements about Mingo and Warner, including but not limited to the false and defamatory statements discussed above in the Report and in Singla's email of August 5, 2021, Singla gave publicity to matters concerning Mingo and Warner that placed them in a false light before a large number of recipients, including members of Local 2876, other AFGE officials, non-members, and GPO management.

107. Singla did this in her capacity as Local 2876 President and as an agent and representative of AFGE and Local 2876.

108. Singla's actions in placing Mingo and Warner in a false light would be highly offensive to a reasonable person.

109. Singla knew that the statements about Mingo and Warner were false or acted with reckless disregard as to the statements' truth or falsity and the false light in which Mingo and Warner were placed.

110. As a result of Singla's actions, Mingo and Warner suffered damages, including

injury to their professional, political, and personal reputation, emotional distress, mental anguish, financial loss, and harm to their overall well-being.

111. AFGE and Local 2876 are legally responsible for Singla's placing Mingo and Warner in a false light because she acted in her capacity as Local 2876 President and as an agent and representative of Local 2876 and AFGE.

For these reasons, Plaintiffs demand judgment against Defendants in an amount to be determined at trial as follows:

1. compensatory damages for Mingo and Warner in excess of $100,000 each;
2. punitive damages for Mingo and Warner in excess of $100,000 each;
3. together with interest, costs, reasonable attorneys' fees and other expenses, and such other relief as may be appropriate under the circumstances.

Dated: November 1, 2022

Respectfully submitted,

*/s/David S. Wachen*
David S. Wachen (Bar No. 12790)
WACHEN LLC
11605 Montague Court
Potomac, MD 20854
(240) 292-9121
Fax (301) 259-3846
david@wachenlaw.com

*Counsel for Plaintiffs Tina Mingo and Kimberly Warner*

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury.

*/s/David S. Wachen*
David S. Wachen

18

## **Certificate of Service**

On November 1, 2022, I caused the foregoing to be electronically filed through the Court's CM/ECF system. Service on Defendants is being made via the Court's CM/ECF system.

*/s/David S. Wachen*
David S. Wachen
*Counsel for Plaintiffs*
